```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YCHEL MARIE JAQUEZ,                          :

                         Plaintiff,          :

       -against-                             :       **MEMORANDUM AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,             :             19-CV-9994 (KNF)

                         Defendant.          :
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Ychel Marie Jaquez ("Jaquez") commenced this action against the Commissioner of Social Security (the "Commissioner"), seeking review of an administrative law judge's ("ALJ") September 4, 2018 decision, finding Jaquez ineligible for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-43, and Supplemental Security Income benefits ("SSI"), pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385. Before the Court are the parties' motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

On February 23, 2016, Jaquez filed protectively applications for DIB and SSI, alleging disability beginning October 31, 2015. Her application was denied, and she requested a hearing, at which she appeared with counsel to testify before the ALJ. The ALJ determined that Jaquez: (1) meets the insured status requirements of the Social Security Act through December 31, 2020; (2) has not engaged in substantial gainful activity since October 31, 2015, the alleged onset date; (3) "has the following severe impairments: disc bulging/herniation, sciatica, depressive disorder, impulse control disorder, anxiety disorder, and post-traumatic stress disorder"; (4) does not have

1

an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform light work, except that "she could not climb ladders, ropes, or scaffolds," "could occasionally climb ramps and stairs," "could occasionally balance, stoop, kneel, crouch, and crawl," "could avoid unprotected heights and moving machinery," "would be limited to occasional use of foot or leg controls," "should avoid concentrated exposure to pulmonary irritants such as dust and fumes, as well as humidity, wetness, temperature extremes, and vibration," "is limited to unskilled, simple, routine work with only occasional interaction with supervisors and coworkers and no interaction with the general public" and "could have no fast-paced or high-production work and low-stress"; (6) is unable to perform any past relevant work; (7) was a younger individual age 18-49 on the alleged disability onset date; and (8) has a limited education and is able to communicate in English.  The ALJ found that Jaquez's medically determinable impairments could be expected reasonably to cause the symptoms alleged by Jaquez, but her statements about the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record and not supported fully by the treatment record.

Concerning opinion evidence, the ALJ gave partial weight to the opinions of a psychological consultative examiner, Dr. Arlene Rupp-Goolnick, PhD ("Dr. Rupp-Goolnick"), and a physical consultative examiner, Dr. Allen Meisel ("Dr. Meisel"), because: (a) each doctor had the opportunity to evaluate Jaquez; (b) each doctor is "familiar with Social Security policies, guidelines, and regulations"; (c) their opinions are "generally consistent with the negative straight leg testing elsewhere in the record and the claimant's improvement in her mental health symptoms with medication"; and (d) Dr. Rupp-Goolnick's finding of mild limitations in

adhering to a schedule, learning new tasks, and dealing with stress and Dr. Meisel's finding of mild limitations in standing, walking, climbing stairs, bending and kneeling, "are vague and do not articulate specific vocational limitations." The ALJ gave partial weight to the opinion of a consulting expert, psychiatrist Dr. Fatin Nahi ("Dr. Nahi"), noting that his finding that Jaquez has no limitation in her ability to work with instructions or interact with others is contradictory to his finding that Jaquez has mild limitation interacting with others. The ALJ accorded partial weight to the opinion of a consultative internist, Dr. John Fkiaras ("Dr. Fkiaras"), because it was based on an examination and is generally consistent with the benign observations of Dr. Meisel during his consultative examination, and with the normal gait and negative straight leg testing seen in other examinations of record, but Dr. Fkiaras only had the opportunity to see Jaquez on one occasion.

  The ALJ gave little weight to the opinion of a consultative examiner, Daniel Cohen, PhD ("Dr. Cohen"), because his opinion is: (i) inconsistent with his own observations, "wherein he noted she was anxious but socially appropriate with only mild deficits in cognitive function"; and (ii) "largely based on the claimant's subjective representations that are contradicted elsewhere in the record." For example, Jaquez told Dr. Cohen she had three panic attacks a week, while she reported to her psychiatrist the next month that she had only four panic attacks in the prior two months. Moreover, Dr. Cohen's findings are inconsistent with unremarkable observations by Dr. Rupp-Goolnick, Jaquez's several reports of feeling better with medication and the record as a whole, and he only saw Jaquez once. The ALJ also gave little weight to the June 2016 opinion of Dr. Cindy Grubin ("Dr. Grubin") that Jaquez was temporarily unable to work due to back and foot pain and the August 2016 opinion of Dr. Angela Stroe ("Dr. Stroe") that Jaquez was unemployable for three months because they are temporary and inconsistent with the physical

examination performed around the same time showing negative straight leg testing, normal range of motion and no trigger points, as well as Jaquez's reports of independence in activities of daily living and recommendations of her providers that she exercise five times a week.

The ALJ found that transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding of not disabled regardless of the transferable job skills. Considering Jaquez's age, education, work experience and residual functional capacity, the ALJ determined that jobs exists in significant numbers in the national economy that Jaquez can perform, such as routing clerk, mail sorter and marking clerk. Even if Jaquez were limited to only sedentary work, the vocational expert testified that sedentary, unskilled work is available, such as addressing clerk, document preparer and inspector. The ALJ concluded that Jaquez has not been under disability from October 31, 2015, through the date of the ALJ's decision.

## PLAINTIFF'S CONTENTIONS

Jaquez contends that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ failed to consider: (1) her morbid obesity; (2) the limiting effects of her degenerative disc disease of the lumbar spine; and (3) the limiting effects of her anxiety, depression and impulse disorder. Jaquez asserts that nearly every medical record includes a finding of morbid obesity and she was required to obtain medical clearance for a spinal injection due to her morbid obesity, which the ALJ did not consider in determining residual functional capacity. The ALJ also failed to consider Jaquez's morbid obesity at each step of the sequential analysis, as required by Social Security Ruling 02-1p, because at step two, the ALJ asserts that she considered additional cumulative effects of obesity but did not make any

4

statements about obesity at any subsequent step of the sequential evaluation or explain how any of Jaquez's limitations was impacted by her obesity. This was an error warranting remand.

According to Jaquez, in finding that Jaquez "can perform light work with limitations, the ALJ necessarily determined that she could sit for 6 hours in an 8-hour workday and "stand/walk" for 6 hours in an 8-hour work day," despite Jaquez's written function report in which she reported that she cannot stand or walk longer than five minutes at a time. Dr. Fkiaras opined, upon the November 9, 2017 examination, that Jaquez "can only sit for 1-2 hours at a time, stand for 1 hour at a time and walk for 30-45 minutes at a time," and Dr. Grubin opined, in June 2016, that Jaquez was unable to work due to back and foot pain, which was similar to the limitations found by Dr. Stroe in August 2016. Consultative examiner, Dr. Meisel opined, in June 2016, that Jaquez has mild limitations standing, walking, climbing stairs, bending and kneeling. Thus, it is not clear what evidence supports the ALJ's residual functional capacity assessment, and the ALJ failed to make citation to any medical evidence in support of the finding that Jaquez can sustain employment at the light exertional level.

Jaquez asserts that the ALJ failed to evaluate properly her mental residual functional capacity. Jaquez testified about her symptoms and her "medical records consistently report symptoms such as being emotional, diminished interest/motivation, racing thoughts, irritability, poor concentration, difficulty sleeping, depressed mood, and flat and constricted affect." Dr. Alexander Alerte ("Dr. Alerte") diagnosed Jaquez with generalized anxiety disorder, impulse disorder and depression and prescribed Doxepin, Topiramate, Hydroxyzine and Wellbutrin. In 2016, Dr. Rupp-Goolnick diagnosed Jaquez with depressive disorder and generalized anxiety disorder and opined that Jaquez has mild limitations in adhering to a schedule, learning new tasks and dealing with stress. In 2017, Dr. Cohen opined that Jaquez has mild limitations in

5

understanding, remembering, or applying complex directions and instructions, and in using reason and judgment to make work-related decisions, moderate limitations in interacting adequately with supervisors, coworkers, and the public, and in sustaining concentration and performing a task at a consistent pace, and marked limitations in sustaining an ordinary routine and regular attendance at work and in regulating emotions, controlling behavior, and maintaining well-being. According to Dr. Cohen, Jaquez's psychiatric and cognitive problems may significantly interfere with her ability to function on a daily basis. However, the ALJ concluded that Jaquez only suffers from anxiety and post-traumatic stress disorder and that she can perform unskilled, simple, routine work with only occasional interaction with supervisors and coworkers and no interaction with the general public and without fast-paced or high-production work and low-stress. Jaquez maintains that the ALJ gave little or partial weight to every medical opinion and relied on her own interpretation of the medical records, which was an error. The ALJ also erred by posing a hypothetical question to the vocational expert based on the flawed residual functional capacity assessment, which did not include all Jaquez's physical and mental impairments, warranting remand.

## DEFENDANT'S CONTENTIONS

The defendant asserts that the ALJ's decision is supported by substantial evidence. The ALJ gave proper "partial weight to, and relied on, the opinions of the consultative examiners, Drs. Meisel and Fkiaras, because they were supported by detailed clinical examination findings, consistent with other evidence of record, and because the physicians were familiar with the agency's policies, guidelines and regulations." Dr. Meisel's findings that Jaquez had only mild limitations for standing, walking, climbing stairs, bending and kneeling was based on his largely unremarkable findings, such as a normal gait, lack of need for any assistive device, lack of need

for help getting on and off the examination table and rising from a chair without difficulty, normal range of motion in the neck and back, no trigger points or spasms, negative straight leg raise ("SLR") and the absence of any neurological deficits. Similarly, Dr. Fkiaras opined that Jaquez could lift and carry up to 20 pounds occasionally and 10 pounds frequently, sit for up to eight hours a day, stand for up to six hours, and walk for up to two hours, with additional postural and environmental limitations. Dr. Fkiaras observed that, despite limited range of motion in her lumbar spine, Jaquez did not require any assistive device, had a slow but otherwise normal gait and a normal stance, needed no help changing for the examination or getting on and off the examination table, did not display any neurological deficits or muscle atrophy, and showed negative results with SLR testing. Moreover, the ALJ considered properly other evidence consistent with the opinions of Dr. Meisel and Dr. Fkiaras, such as December 2015 examination notes by Dr. Ralph Heiss ("Dr. Heiss") revealing reduced range of motion with pain, but no loss of strength or muscle tone or any other neurological deficits, and January 2016 notes by a neurologist, Dr. Bogdan Negrea, showing "some reduction in strength (4/5), but muscle tone and gait were within normal limits, and sensation and reflexes were intact." The ALJ also observed, a magnetic resonance imaging scan of Jaquez's lumbar spine performed on January 29, 2016, which showed disc bulges but only mild stenosis. Dr. Stroe found, on April 13, 2016, despite reduced range of motion of the lumbar spine, that Jaquez's strength was full, gait was normal, and SLR was negative. Strength remained full and SLR remained negative when Jaquez returned to Dr. Stroe on May 24, July 6, and August 3, 2016. Although Jaquez points to other evidence she believes supports greater restrictions, she failed to show why the ALJ's opinion does not support at least an ability to perform sedentary jobs identified by the vocational expert. According to the defendant, the ALJ gave limited weight to the opinions of

Dr. Stroe and other clinicians treating Jaquez, since "they imposed only temporary restrictions lasting less than 12 months, represented opinions on issues reserved to the Commissioner, and were inconsistent with other substantial evidence discussed above, including the opinions of Drs. Meisel and Fkiaras." The defendant asserts that Dr. Meisel's finding of mild limitations support the ALJ's residual functional capacity determination. Jaquez's disagreement with the ALJ's conclusions does not show that no reasonable factfinder could have reconciled the conflicts in the evidence to arrive at the same conclusions as the ALJ.

The defendant asserts that the ALJ considered properly Jaquez's obesity, finding at step two that her obesity is not a severe impairment, and the ALJ "considered the additional and cumulative effects of Plaintiff's obesity throughout the remainder of the sequential evaluation process," which is what is required by Social Security Ruling 02-1p. In reconciling the evidence, the ALJ relied properly on the consultative examiners who observed and accounted for Jaquez's obesity, and Jaquez failed to identify any additional limitations that should have been included in the residual functional capacity finding due to her obesity.

The defendant contends that substantial evidence also supports the ALJ's mental residual functional capacity finding, and the ALJ assigned properly partial weight to Dr. Rupp-Goolnick's opinion and the opinion of an impartial medical expert, psychiatrist Dr. Nahi, who reviewed the record and assessed no more than mild limitations in any area, as well as discussed evidence consistent with them, including Dr. Alerte's largely unremarkable findings. While Dr. Cohen assessed marked limitations in sustaining an ordinary routine, being consistent with attendance, regulating emotions, and controlling behavior, the ALJ assigned this opinion little weight properly, since it was not well supported by the doctor's own examination findings and was an outlier compared to the other record evidence. For example, as the ALJ observed,

although Jaquez presented to Dr. Cohen as "quite anxious," she was able to maintain an adequate manner of relating, clear and fluent speech, coherent and goal directed thought processes, and only mildly impaired attention, concentration, and memory.  Moreover, Jaquez expressed complaints to Dr. Cohen inconsistent with the record evidence, such as experiencing three panic attacks a week, but one month later, at a visit to a psychiatrist, Dr. Isaac Bampoe, reporting four panic attacks over the prior two months.  Jaquez also reported significant symptoms of trauma to Dr. Cohen, which do not appear elsewhere in her treatment records.  The defendant asserts that the ALJ noted properly that Dr. Cohen's opinion was inconsistent with observations and less restrictive conclusions of Dr. Rupp-Goolnick and Dr. Nahi.  Since the plaintiff failed to satisfy her burden, the defendant's motion should be granted.

## PLAINTIFF'S REPLY

The plaintiff contends that the ALJ erred by relying on the opinions of "psychologists Dr. Rupp-Goolnick and Dr. Nahi" because neither of them is a psychiatrist.  Contrary to the defendant's assertion that two consultative examiners observed and accounted for Jaquez's obesity, the reports of consultative examiners Dr. Fkiaras and Dr. Meisel "do not even mention Ms. Jaquez's morbid obesity, yet alone account for it."  Furthermore, the ALJ gave only partial weight to the opinions of Dr. Fkiaras and Dr. Meisel and it is not clear to what extent the ALJ relied on their opinions.  Although the defendant asserts that the ALJ relied properly on Dr. Fkiaras' opinion, Dr. Fkiaras opined that Jaquez "can only sit for 1-2 hours at a time, stand for 1 hour at a time and walk for 30-45 minutes at a time."  Jaquez asserts that she "likely does not have the ability to sustain employment at the light exertional level and both the ALJ and the Commissioner have failed to cite any valid medical evidence to suggest otherwise.

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

"If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to

10

adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.
>
> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

**APPLICATION OF LEGAL STANDARD**

Obesity

Jacquez asserts that the ALJ erred when, "at step two, the ALJ asserts that she considered additional cumulative effects of obesity but did not make any statements about obesity at any subsequent step of the sequential evaluation or explain how any of Jaquez's limitations was impacted by her obesity." The defendant asserts that the ALJ complied with the requirements of Social Security Ruling 02-1p because, in reconciling the evidence, the ALJ relied properly on the consultative examiners who observed and accounted for Jaquez's obesity.

At step two of the sequential analysis, the ALJ noted that Jaquez "does not allege her weight affects her ability to work," and she "has not adhered to recommendations to exercise throughout the record," which the ALJ found is evidence that "shows that the claimant's obesity no more than minimally affects her ability to work, and therefore is a non-severe impairment." Jaquez does not identify any requirement contained in Social Security Ruling 02-1p with which the ALJ failed to comply at "Sequential Evaluation Step 3, The Listings" and "Sequential Evaluation Steps 4 and 5, Assessing Functioning in Adults." When determining residual functional capacity, the ALJ explained how she reached her conclusions concerning Jaquez's exertional functional limitations and her ability to sustain work activities in an ordinary work setting on a regular and continuing basis, which "means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 02-1p. Although Dr. Fkiaras, whose opinion the ALJ accorded partial weight, noted Jaquez's height and weight in his opinion, he did not diagnose Jaquez with obesity or find that any limitations in her ability to do work-related activities were due to or associated with obesity. Similarly, the ALJ gave partial weight to Dr. Meisel's orthopedic examination opinion in which Dr. Meisel noted Jaquez's height and weight

but did not diagnose or mention obesity. In the absence of any mention of obesity by Dr. Fkiaras and Dr. Meisel, the ALJ refrained properly from substituting her own opinion for those of medical professionals concerning obesity. The Court finds that the ALJ did not err in evaluating obesity and she complied with Social Security Ruling 02-1p. Accordingly, remand is not warranted based on this ground.

Limiting Effects of Jaquez's Degenerative Disc Disease of the Lumbar Spine

Dr. Fkiaras opined that Jaquez "can only sit for 1-2 hour at a time, stand for 1 hour at a time and walk for 30-45 minutes at a time," as Jaquez asserts, but also, consistently, that Jaquez "could sit up to eight hours a day, stand for up to six hours, and walk for up to two hours per day." The ALJ accorded properly partial weight to Dr. Fkiaras's opinion because he only saw Jaquez once, and the ALJ found that further limitation on Jaquez's ability to work around ladders and scaffolds based on her testimony is warranted. Jaquez asserts that Dr. Meisel found that Jaquez has mild limitations standing, walking, climbing stairs, bending and kneeling. However, the ALJ gave properly partial weight to Dr. Meisel's findings of mild limitations because they were vague and did not identify specific vocational limitations. The ALJ also rejected properly Dr. Grubin's opinion that Jaquez was temporarily unable to work due to back and foot pain and Dr. Stroe's opinion that Jaquez was unemployable for three months because they were temporary and inconsistent with contemporaneous physical examination findings of negative straight leg testing, normal range of motion, no trigger points, Jaquez's reports of independence in activities of daily living and the recommendations of her healthcare providers that she exercise five times a week. Having identified the weight given to opinion evidence and the reasons for the weight given, the Court finds that the ALJ complied with the regulatory requirements, and the ALJ's

residual functional capacity assessment in connection with Jaquez's exertional limitations is supported by substantial evidence.

Limiting Effects of Jaquez's Anxiety, Depression and Impulse Disorder

The plaintiff's assertion that the ALJ erred by relying on the opinion of Dr. Nahi because he is a psychologist is rejected as baseless. The record indicates that Dr. Nahi is a psychiatrist, not a psychologist. Although in support of her argument that the ALJ failed to consider properly limiting effects of Jaquez's anxiety, depression and impulse disorder Jaquez relies on Dr. Rupp-Goolnick's findings of mild limitations in adhering to a schedule, learning new tasks and dealing with stress, in her reply Jaquez argues, for the first time, that the ALJ erred by relying on Dr. Rupp-Goolnick's opinion because she is a psychologist and not a psychiatrist. The Court declines to consider Jaquez's argument made for the first time in reply. See Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").

Jaquez asserts that the ALJ failed to evaluate properly her mental residual functional capacity, relying in support of that assertion on her testimony before the ALJ about her symptoms. However, the ALJ found Jaquez's testimony concerning the intensity, persistence and limiting effects of the symptoms not entirely consistent with the medical evidence and other evidence in the record and not supported fully by the treatment record. Jaquez does not assert that the ALJ's credibility determination was not supported by substantial evidence. The Court finds that the ALJ's credibility determination is supported by substantial evidence.

The plaintiff asserts that Dr. Rupp-Goolnick found mild limitations in adhering to a schedule, learning new tasks and dealing with stress, and Dr. Cohen found mild limitations in understanding, remembering, or applying complex directions and instructions, and in using

14

reason and judgment to make work-related decisions, moderate limitations in interacting adequately with supervisors, coworkers, and the public, and in sustaining concentration and performing a task at a consistent pace, and marked limitations in sustaining an ordinary routine and regular attendance at work and in regulating emotions, controlling behavior, and maintaining well-being.  However, the ALJ gave partial weight properly to Dr. Rupp-Goolnick's findings of mild limitations, explaining that they were vague and did not articulate specific vocational limitations.  The ALJ accorded little weight properly to Dr. Cohen's findings of mild and moderate limitations, explaining that his findings are: (a) inconsistent with his own observations of Jaquez; (b) based largely on Jaquez's subjective representations contradicted by the record; (c) inconsistent with Dr. Rupp-Goolnick's unremarkable observations and Jaquez's several reports about feeling better with medication; (d) inconsistent with the record as a whole; and (e) based on a single examination.  Contrary to Jaquez's assertion, the ALJ did not rely on her own interpretation of the medical records; rather, she assessed properly opinion evidence according to the regulatory requirements, identified the weight given and explained the reasons for the weight given.  The Court finds that the ALJ did not commit any legal error, and the ALJ's residual functional capacity assessment concerning Jaquez's mental impairments is supported by substantial evidence.  Although Jaquez points to the same medical evidence in the record containing findings that support her position, that is not sufficient to meet her burden of showing that the ALJ's residual functional capacity determination is not supported by substantial evidence or that the ALJ committed a legal error.  See Johnson, 563 F. Supp. 2d at 454.

Upon review of the record and the parties' respective motions, the Court finds that the ALJ's decision is supported by substantial evidence and the ALJ did not commit any legal error.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings, Docket Entry No. 25, is denied, and the defendant's motion for judgment on the pleadings, Docket Entry No. 30, is granted and the ALJ's September 4, 2018 decision affirmed.

Dated: New York, New York  
      November 30, 2020

SO ORDERED:

_____  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE